JAMES F. MILLIKEN, Appellant, *v.* THE WESTERN UNION TELEGRAPH COMPANY, Respondent.

It is not sufficient to sustain a demurrer to show that the facts are imperfectly or informally averred, or that the pleading lacks definiteness, or that the material facts are argumentatively stated.

In determining the sufficiency of the pleading demurred to, it must be assumed that the facts stated therein, as well as such as may by reasonable and fair intendment be implied from the allegations made, are true.

The complaint in this action stated, in substance, among other things, that plaintiff's agent in France forwarded a cable message addressed to "Mentor, New York," which message was intended for plaintiff; it was received by defendant, a corporation, whose business it is to transmit and deliver messages by sub-marine cable connected with its lines of wire; that said defendant agreed with plaintiff in New York that, upon receipt of such a message, it would promptly deliver the same to plaintiff at his residence in said city; that plaintiff then offered to pay defendant in advance for such service, but defendant declined to receive and accept such payment; that defendant received such message but neglected to deliver the same as agreed, in consequence whereof plaintiff suffered loss, etc. On demurrer to said complaint, *held*, that it stated a good cause of action, either upon the contract made by defendant with plaintiff's agent in France, or upon the agreement with plaintiff in New York.

The rule that a principal may maintain an action upon a parol contract made by his agent with a third person, although the agency is not disclosed at the time of making the contract, applies in actions against telegraph companies.

As a general rule the law will imply a promise to pay for valuable services rendered to a party upon his request.

*Milliken* v. *W. U. Tel. Co.* (21 J. & S. 111) reversed.

(Submitted June 20, 1888; decided October 2, 1888.)

APPEAL from order of the General Term of the Superior Court of the city of New York, made March 1, 1886, which affirmed a judgment entered upon an order sustaining a demurrer to the complaint. (Reported below, 21 J. & S. 111.)

The averments of the complaint, so far as material to the questions discussed, are as follows:

" III. That the principal business of defendant is to receive and transmit messages by telegraph over certain lines of wire running through the state of New York, and into and through certain states and counties contiguous thereto, and to deliver the same and to receive, transmit and deliver messages from abroad transmitted by sub-marine telegraph cables in connection with its lines of wire, and proper facilities operated by it for that purpose ; and the confidence which the public is invited to and does repose in the care with which defendant conducts its said business is a source of large profit and gain to said defendant.

IV. And the said defendant held out and represented to the world, and to this plaintiff, that it would conduct its said business with reasonable care, diligence and dispatch, and that it would transmit, receive and deliver telegraphic and cable messages in as diligent, competent and correct manner with all convenient speed.

V. And plaintiff, relying upon said inducements and representations, entered into a contract with said defendant as hereinafter set forth.

VI. That plaintiff, on the 15th day of December, 1883, was applied to by a person who then desired to purchase from

plaintiff a certain French play or dramatic composition entitled " Pot Bouille," owned by parties in the city of Paris, in the republic of France, and then being produced and exhibited in that city, and said applicant was then willing to pay plaintiff for said play the sum of $3,000, but plaintiff was, at the time said application was made to him, ignorant of the facts as to whether he could purchase said play and the price he would be required to pay therefor; and, in order to ascertain said facts, plaintiff did, on said 15th day of December, 1883, send a cable message to Thomas Linn, plaintiff's agent in Paris, which said message was as follows, to wit: " What is the lowest price at which you can buy ' Pot Bouille ? ' " And said Linn received said message promptly and forwarded a reply to plaintiff, addressed " Mentor, New York," which said reply plaintiff subsequently learned was received by defendant, and was in defendant's possession on the 17th day of December, 1883.

That plaintiff called at defendant's office on said 17th day of December, 1883, and inquired if defendant had received a message addressed " Mentor, New York; " and plaintiff was informed by defendant that it had not received such message, but said defendant then represented and stated to plaintiff that any message sent by cable from Paris to New York would be received by and through defendant in New York; but said defendant did not then, nor at any time thereafter, deliver said message to plaintiff, although plaintiff alleges, upon information and belief, that said message, directed as aforesaid, was then in the possession and custody of defendant.

Plaintiff further says that, on said 17th day of December, 1883, he requested defendant to register the name and address of plaintiff in order that said message might be promptly delivered to plaintiff, and defendant then and there, pursuant to its custom and in the regular course of its business, did register the name and address of plaintiff in a book kept by defendant for such purpose as follows, to wit: " Mentor, New York, James F. Milliken, No. 19 West Twenty-fourth street, New York city "; and plaintiff then informed defendant that

he was expecting a message from Paris, addressed "Mentor, New York," and that he believed said message had been sent and should be in the possession and custody of defendant; and that said message was of great importance to plaintiff, and involved a transaction with regard to the sale of a play by plaintiff, and said transaction involved a large sum of money; and that plaintiff could do nothing with regard to it until he had received said message; and defendant then and there promised and agreed to and with the plaintiff that defendant would send such message, without delay, to plaintiff, at No. 19 West Twenty-fourth street, in said city of New York, if said message had been received or should be received by defendant; and defendant held out and represented to plaintiff, as hereinbefore set forth, that defendant would deliver said message to plaintiff safely, promptly and with diligence and dispatch; and plaintiff, relying upon said representations and inducements, and reposing confidence in the care with which defendant conducted its said business as aforesaid, did then and there contract and agree with defendant for the delivery of said message by defendant to plaintiff, and said defendant undertook and agreed to, and with this plaintiff, to deliver said message to plaintiff at No. 19 West Twenty-fourth street, in the city of New York, safely, promptly and with diligence and dispatch, and plaintiff then offered to pay and reward said defendant in advance for said service and for registering plaintiff's name and address, but said defendant then declined to receive or accept pay or reward.

VII. That defendant received said message and reply, addressed "Mentor, New York," prior to the 19th day of December, 1883, as plaintiff is informed and believes, but said defendant, not regarding its said promise and undertaking, and well knowing the importance of said message, did not take due care to deliver said message to plaintiff as agreed, although thereafter frequently solicited and requested to do so by plaintiff; and did not then deliver said message to plaintiff, nor at any time afterwards, but, on the contrary, the defendant so negligently and carelessly conducted itself with respect

to said message and the delivery thereof, that, by and through the mere carelessness, negligence and improper conduct of the defendant, its servants and employes, said message was never delivered to plaintiff, and is still in the possession and custody of defendant; and by reason of the premises in that behalf, and in consequence of the negligence of defendant as aforesaid, and not through any negligence or fault of this plaintiff, plaintiff lost the sale of said play, and suffered thereby loss and damage in a large sum of money, to wit, in the sum of $1,400; and plaintiff alleges that he has since ascertained the fact to be that said message contained information that plaintiff could purchase and secure said play at a price not to exceed 8,000 francs; and plaintiff alleges that if defendant had delivered said message to plaintiff, as agreed, plaintiff would have sold said play for $3,000, and would have realized thereby a profit of not less than $1,400.

Wherefore plaintiff demands judgment," etc.

*William L. Snyder* for appellant. The trust and confidence induced by undertaking any service for another is a sufficient consideration to create a duty in the performance of it. (Pars. on Contracts, 447; *Coggs* v. *Bernard*, 2 Ld. Ray. 919; *Hammond* v. *Hussey*, 51 N. H. 40; *Jenkins* v. *Bacon*, 111 Mass. 373; *Kowing* v. *Manly*, 49 N. Y. 192; *West. Union Tel. Co.* v. *Fontaine*, 58 Ga. 436; *Same* v. *Blanchard*, 68 id. 299; *Same* v. *Shotter*, 18 Cent. Law Jour. 230; *N. Y. & Wash. Pr. Tel. Co.* v. *Dryburg*, 35 Pa. St. 298; *Parks* v. *Alta Cal. Tel. Co.*, 13 Cal. 423; *Leonard* v. *Tel. Co.*, 41 N. Y. 544; *Tyler* v. *West. Union*, 60 Ill. 421; 2 Pars. on Contracts, 257; *Johnston* v. *West. Union Tel. Co.*, 3 Fed. Rep. 365, No. 6.) This action may be maintained either in tort or contract. (*West. Union Tel. Co.* v. *Fontaine*, 58 Ga. 438; *Hammond* v. *Hussey*, 51 N. H. 40; *Jenkins* v. *Bacon*, 111 Mass. 373; *Kowing* v. *Manly*, 49 N. Y. 192.)

*Wager Swayne* and *David Keane* for respondent. The complaint does not show any contract obliging the respondent

to deliver to appellant the telegram in question. (*Dickson* v. *Reuter's Tel. Co.*, L. R., 2 C. P. Div. 62; affirmed, L. R., 3 C. P. Div. 1; *Playford* v. *U. K. E. Tel. Co.*, L. R., 4 Q. B. 706; 2 Pars. on Contracts, § 8; Gray's Communication by Telegraph, § 66.)

RUGER, Ch. J. The questions involved in this appeal are raised, by a demurrer to the complaint, alleging that it does not state facts sufficient to constitute a cause of action. Both the Special and General Terms sustained the demurrer, and ordered judgment for defendant. We are of the opinion, however, that the complaint does state a cause of action.

It must be assumed, at the outset, that the facts stated therein, as well as such as may, by reasonable and fair intendment, be implied from the allegations made, are true. It is not sufficient, to sustain a demurrer, to show that the facts are imperfectly or informally averred, or that the pleading lacks definiteness and precision, or that the material facts are argumentatively stated. (*Lorillard* v. *Clyde*, 86 N. Y. 384; *Marie* v. *Garrison*, 83 id. 14.) If, from the facts stated, it appears that the defendant incurred a liability to the plaintiff, whether arising upon contract, or from an omission to perform some legal duty or obligation resting upon it, the complaint should be sustained whether the plaintiff has set forth the legal inferences which may be implied from the facts stated or not. (*White* v. *Madison*, 26 N. Y. 117.) The present system of pleading does not require that the conclusions of law should be set forth in the pleading, provided the court can see, from any point of view, from the facts stated that a legal obligation rested upon the defendant. (*Eno* v. *Woodworth*, 4 N. Y. 249.)

The inquiries in this case are, first, whether the defendant was competent to enter into the contract alleged by the complaint to have been made; and, secondly, whether a valid contract was made between it and the plaintiff, to do or perform the service undertaken by it.

The first question may be briefly disposed of, as no point is

made as to the competency of the defendant to contract to deliver telegraphic messages to persons addressed, and the sole inquiry is, therefore, whether the complaint shows that it has made a valid contract to do so.

The demurrer concedes that an agreement was made by which the defendant promised to deliver a message, expected to be received by it from the plaintiff's agent in Paris, addressed " Mentor, New York " to the plaintiff, at his residence, as soon as the same should come into its possession.

The facts alleged show that the plaintiff had made arrangements with his agent in Paris to obtain information upon business, in which the plaintiff was solely interested, and transmit it by telegraph to New York to the address of " Mentor." It also appears that the message was really intended for the plaintiff, and that it was duly received by the defendant, but was not delivered by it.

The sole claim of the defendant, therefore, is reduced to the contention that the complaint does not show a good or sufficient consideration for its promise to deliver such message, and that no legal duty rested upon it to deliver the same to the plaintiff. We think that this complaint, under the rules of law applicable to questions raised by demurrers, does state a cause of action on the part of the plaintiff against the defendant. We can see no reason why the defendant is not liable to the plaintiff, upon the contract made by it with his agent in Paris, for the transmission and delivery of the message. So far as appears, the plaintiff was the only party interested in the business to which the message related, and the only person who could be benefited by the performance of that contract. It is quite obvious, from the averments in the complaint, that the defendant secured possession of the message under a contract to transmit and deliver it to the person answering the description of its address, in New York. (*Baldwin* v. *U. S. Tel. Co.*, 1 Lans. 125 ; *Leonard* v. *N. Y., etc.. Tel. Co.*, 41 N. Y. 544.) If the defendant had been unable, by reason of the fictitious address, to identify the person for whom it was intended, it would have been a suffi-

cient excuse for its non-delivery, but this difficulty was obviated before the duty of delivery fell upon the carrier, by the information, given to and accepted by it, as satisfactory evidence of the identity of the person for whom it was intended. The rule that a principal is entitled to maintain an action upon a contract made by his agent with a third person, although the agency is not disclosed at the time of making the contract, has many illustrations in the reported cases, and is elementary law. (*Coleman* v. *Bank of Elmira*, 53 N. Y. 388; *Briggs* v. *Partridge*, 64 id. 357; *Ford* v. *Williams*, 21 How. [U. S.] 288; *Dykers* v. *Townsend*, 24 N. Y. 57.) This principle has been frequently applied in actions against telegraph companies, and is now the settled law of this country in respect to such corporations. (*De Rutte* v. *N. Y., Albany and Buffalo E. M. Tel. Co.*, 1 Daly, 547; *Leonard* v. *Tel. Co.*, 41 N. Y. 544; *N. Y. & W. P. Tel. Co.* v. *Dryburg*, 35 Pa. 300; *Baldwin* v. *Tel. Co.*, 1 Lans. 128.)

In *Leonard* v. *Telegraph Company* an action was sustained on account of a change made in the language of a telegram passing between two of the plaintiff's agents, by which a loss was inflicted upon their common principal. In *Playford* v. *United Kingdom Electric Telegraph Company* (L. R., 4 Q. B. 706), in an action brought by the person receiving a message against the telegraph company for having negligently changed the terms of the dispatch, in course of transmission, whereby the plaintiff suffered damage, by acting upon it as received, it was held that the company was under no contract obligation to the plaintiff to deliver the message correctly, but it was conceded if the senders had been the agents of the plaintiff in the business to which the message related, that a recovery could have been had. Some of the authorities in this country go still further and hold that a telegraph company rests under a legal duty to the person to whom a message is addressed, when he is the party solely interested, to transmit it correctly and deliver it to him; but it is unnecessary, in this case, to pass upon that question and we, therefore, express no opinion upon it. (*De Rutte* v. *Tel. Co.*, *supra*; *Wads-*

*worth* v. *W. U. Tel. Co.*, 38 Alb. L. Jour. 87.)    We are, there-
fore, of the opinion that the plaintiff could avail himself of
the obligation of the original contract for the transmission of
the message, and recover, for a breach thereof, such damages
as he might be able to show he had suffered from the alleged
breach.    We are also of the opinion that, aside from the con-
tract referred to, the complaint states a valid contract between
the plaintiff and defendant, made at New York in anticipation
of the arrival of the message at that place.    It alleges that
the plaintiff stated to the defendant that he was expecting a
message from Paris addressed "Mentor, New York," and was
the individual intended by such address, and requested the
defendant to deliver it to him at his residence in that city.
The plaintiff then offered to pay for such service in advance,
which the defendant declined to accept, but entered plaintiff's
name in its register as that of a person entitled to receive
messages addressed to "Mentor," and promised to deliver such
message, in accordance with such request, at plaintiff's residence
when received by it.    That this was a service which the
defendant was authorized to contract to perform is obvious
from the usual course of telegraphic business, and the necessi-
ties of the case.    The fact that the defendant had contracted
with another person to transmit and deliver the same message,
especially as it claims that it did not thereby come under any
legal duty to the plaintiff to seek him out and deliver the
message, would not preclude it from making a contract with
the person addressed, for a special mode of delivery to him.
If the plaintiff, intending to go to a distant city, had contracted
with defendant to repeat such message to him there, could there
be a doubt as to the validity of such a contract?    And we think
it equally within the contractual power of a telegraph com-
pany to agree to such special delivery, either without or
within the limits of its usual delivery, with the person expect-
ing to receive a particular message.    It is said, however, that
there is no consideration alleged for this promise.

    If it can fairly be inferred from the facts alleged that the

parties expected compensation to be made for the services promised, and the payment of such agreed compensation could be enforced by the promisee, a sufficient consideration appears for the undertaking. There is no doubt but that reciprocal promises are a valuable consideration for each other, and that the law will usually imply a promise to pay for valuable services rendered to a party upon his request. (Pollock on Cont. 161; *Coleman* v. *Eyre,* 45 N. Y. 38; *Briggs* v. *Tillotson,* 8 Johns. 304.) That it was expected by the parties that the plaintiff should pay for the delivery of the message is obvious from his offer to do so in advance, and although this was waived by the defendant, that did not preclude it from demanding and enforcing the collection of payment for services performed by it, in pursuance of plaintiff's request. If the complaint had, in terms, alleged a promise to pay for such services, this would have authorized a finding of such promise upon proof of the facts stated in the complaint; and we think that, upon demurrer, the law will imply such a promise, and that the complaint must, therefore, be held to have alleged a good cause of action. (*Marie* v. *Garrison, supra; Eno* v. *Woodworth, supra; Justice* v. *Lang,* 52 N. Y. 323.) For the reasons stated, we think the demurrer should have been overruled.

The judgments of the courts below are, therefore, reversed, and the demurrer overruled, and the defendant have leave to answer the complaint upon payment of all costs and disbursements accruing since the demurrer was interposed.

All concur; EARL, J., on second ground stated in opinion.

Judgment reversed and ordered accordingly.